UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
SECURITIES AND EXCHANGE COMMISSION,        )
                                           )
                          Applicant,       )  No.
                                           )
              v.                           )
                                           )
ROBERT KIELBASA,                           )
                                           )
                          Respondent.      )
_____)


**MEMORANDUM IN SUPPORT OF APPLICATION FOR ORDER
TO SHOW CAUSE AND FOR
ORDER TO COMPLY WITH ADMINISTRATIVE SUPBOENA**

Respondent Robert Kielbasa ("Respondent" or "Kielbasa") has not complied with an

administrative subpoena seeking testimony issued by the staff of the Securities and Exchange

Commission (the "SEC" or "Commission") in connection with the Commission's formal

investigation, In the Matter of Bancorp Rhode Island, Inc. (B-02735).  The Commission

subpoenaed Respondent to testify on April 23, 2013.  When he appeared for testimony, Kielbasa

had two options:  (1) testify, or (2) invoke a valid privilege not to do so.  He did neither.

Respondent Kielbasa refused to provide testimony and further refused to assert any valid

privilege.  On the advice of his counsel, Kielbasa refused to name any specific privilege under

the Fifth Amendment to the United States Constitution.  He asserted a general privilege not to

testify under the Fifth Amendment, but such a privilege has never been recognized by any

district court.  The Commission therefore requests that this Court issue: (1) an Order to Show

Cause why Respondent should not comply with the administrative subpoena; and (2) an Order

compelling Respondent to appear for testimony in the Commission's Boston Regional Office and

further to provide testimony or assert a specific, valid legal right or privilege not to do so.

## BACKGROUND

**1.      The Commission issued a Formal Order of Investigation
        authorizing the staff to issue the administrative subpoena**

On June 27, 2012, pursuant to Section 21(a) of the Securities Exchange Act of 1934

("Exchange Act"), the Commission issued an Order Directing Private Investigation and

Designating Officers to Take Testimony ("Formal Order") in an investigation entitled In the

Matter of Bancorp Rhode Island, Inc., File No. B-02735.  Declaration of William J. Donahue

dated April 30, 2013 ("*Donahue Decl.*") ¶ 3.  Among other things, the Formal Order directed that

an investigation be undertaken to determine whether certain persons or entities had violated

Section 10(b) of the Exchange Act and Rule 10b-5 thereunder in connection with the purchase or

sale of securities of Bancorp Rhode Island, Inc. ("Bancorp").  *Id.* ¶ 3 & Exs. 1 & 2.  Specifically,

the Commission has information that tends to show that certain persons or entities may have

been engaging in insider trading of Bancorp securities.  *Id.*

The Formal Order designated certain officers of the Commission as having power to

subpoena witnesses for documents and testimony.  *Id.*   The Formal Order was amended on

February 6, 2013 to designate an additional officer of the Commission.  *Id.*

**2.      The Commission staff's investigation**

The SEC is investigating possible insider trading in the stock of Bancorp, a Rhode Island

corporation with a principal place of business in Providence, Rhode Island.  As of April 2011,

Bancorp's stock was publicly traded and listed on the NASDAQ Stock Market with the ticker

symbol, BARI.  On April 19, 2011, Bancorp entered a definitive merger agreement to be

acquired by Brookline Bancorp ("Brookline Bank").  *Donahue Decl.*, ¶ 5.  Bancorp announced

this merger acquisition to the investing public on the morning of April 20, 2011, at

2

approximately 8:26 a.m., or approximately an hour before the start of NASDAQ market hours, at

9:30 a.m.  *Donahue Decl.*, ¶ 6.  On the day of the public announcement, the price of BARI stock

closed at $44 per share, an increase of $13.29, or 44%, from the previous day's closing price.  *Id.*

This investigation concerns the possible sharing of material, non-public information

concerning the potential acquisition of Bancorp by a member of its Board of Directors,

hereinafter "*Board Member A,*" with several of his friends and relatives.  In February or early

March 2011, Bancorp management advised its Board of Directors, including *Board Member A*,

that the company had engaged a Wall Street investment bank to seek out business opportunities,

including possible mergers with other banks.  On March 28, 2011, the Bancorp Board, including

*Board Member A*, reviewed two indications of interest to acquire Bancorp, including one from

Brookline Bank, the eventual acquirer, to buy the company at a price ranging from $40 to $48

per share.  For the next two weeks, Bancorp and the two potential suitors (as well as their legal

and investment advisers) engaged in several due diligence and planning meetings.  *Donahue*

*Decl.*, ¶¶ 7.

On April 12, 2011, Brookline Bank and another bank each submitted revised oral

indications of interest based upon their respective due diligence reviews, which were presented

to Bancorp through a Bancorp strategic committee.  Brookline Bank had increased its proposed

purchase price to $48.25 per share.  On April 14, 2011, the Bancorp Board of Directors met to

review the revised indications of interest.  Following the meetings, Bancorp and Brookline Bank,

and their legal counsel, continued to negotiate with respect to a definitive merger agreement and

to prepare related disclosure schedules.  On April 18, 2011, Brookline Bank verbally confirmed

its offer of $48.25 per share.  *Donahue Decl.*, ¶¶ 8-9.

Following the announcement of Bancorp's acquisition transaction, the Commission

received information concerning six individuals who made suspiciously well-timed purchases of Bancorp stock during the due diligence and negotiation process that preceded the company's acquisition. All six of these individuals have been identified as relatives, friends and/or close business associates of *Board Member A*. The Commission is currently investigating whether these investors received material, non-public information from *Board Member A* concerning Bancorp's impending acquisition. *Donahue Decl.*, ¶ 11.

Robert Kielbasa is one of these six individuals. It appears that, in April 2011, Kielbasa and *Board Member A* had known each other for approximately 11 years, and further that they were business partners in a number of real estate investments located in Rhode Island and Florida. Although Kielbasa had an investment adviser through whom he maintained an open brokerage account, Kielbasa had apparently never previously invested in Bancorp stock, and his adviser had never suggested it to him as an investment. On Tuesday, April 12, 2011, however, after a brief call to *Board Member A*'s cell phone, it appears that Kielbasa called his investment adviser and instructed him to buy 1,000 shares of Bancorp stock. The adviser did as apparently instructed. Three days later, on Friday April 15, 2011, after another call to *Board Member A*'s cell phone, it appears that Kielbasa again called his investment adviser to place another order to buy 1,000 Bancorp shares. His adviser again did as apparently instructed. Later the same day, it appears that Kielbasa called a different registered representative at another financial institution in New York and instructed him to buy 1,000 shares of Bancorp stock for an account in the name of a business that is owned by Kielbasa. *Donahue Decl.*, ¶ 12.

Based on this and other information, the staff at the SEC has been authorized to investigate possible violations of Section 10(b) of the Exchange Act and Rules 10b-5. *Id.*, ¶ 13. The Enforcement Division has questions for Kielbasa concerning, among other things, his

relationship and communications with *Board Member A*, and his securities trading experience

generally and with Bancorp stock in particular.

**3.      The circumstances leading to the Respondent's refusal to testify
         or identify a valid privilege not to do so**

On January 22, 2013, the Commission subpoenaed Respondent Kielbasa to testify before

officers of the Commission on February 26, 2013.  After serving the subpoena, the Commission

received a call from an attorney representing Kielbasa, who requested a delay of the scheduled

testimony.  *Donahue Decl.*, ¶¶ 14-15.  At the request of Kielbasa's counsel, the Commission

rescheduled his testimony three different times, to March 28, to April 12, and finally to April 23,

2013.  *Id.*, ¶ 15 & n.1.

Approximately three weeks before Kielbasa's testimony, on April 3, 2013, the

Commission called Respondent Kielbasa's counsel to inquire whether Kielbasa planned to

answer substantive questions or to invoke the Fifth Amendment right against self-incrimination.

Kielbasa's counsel stated that he had not addressed the issue with his client, but stated he would

try to give advanced notice of his client's intention.  *Donahue Decl.*, ¶ 16.

On the morning of Kielbasa's scheduled testimony on April 23, approximately thirty five

minutes before the start, Kielbasa's counsel called the Commission and informed counsel that he

client intended to invoke his "Fifth Amendment rights" not to testify.  Kielbasa's counsel

inquired how this process would work.  Commission counsel then explained that Kielbasa would

be required to identify the specific privilege invoked under the Fifth Amendment, meaning the

right against self-incrimination, and he could thereafter use a short form response to subsequent

questions.  Kielbasa's counsel then asked, "you are going to make us do all of that?"

Commission counsel then confirmed that Kielbasa would be required to identify the specific

legal basis for his invocation of a privilege.  Donahue Decl., ¶¶ 17-19.

At the testimony, Kielbasa refused to provide testimony and, in doing so, invoked the Fifth Amendment in general without identifying the Self-Incrimination Clause.  Commission counsel specifically asked Respondent Kielbasa to identify which right he was asserting under the Fifth Amendment.  He refused to do so.  Kielbasa and his counsel took a break to confer.  When they returned to the hearing, Kielbasa still refused to identify any specific right under the Fifth Amendment to refuse to testify.  Commission counsel provided Kielbasa with a copy of the Fifth Amendment and asked him to identify the right he was invoking to refuse to provide testimony.  He refused to do so.  Kielbasa's counsel then stated that his client did not have to identify any particular right under the Fifth Amendment in refusing to provide testimony.  At that point, the parties were at an impasse concerning whether Kielbasa was invoking a valid privilege not to provide testimony.  Commission counsel then suspended testimony for the purpose of seeking judicial assistance.  Donahue Decl., ¶¶ 20-23  & Ex. 4 (Transcript) at 7:24-13:10.

## ARGUMENT

As explained in Part I below, the Commission has served Respondent Kielbasa with an enforceable subpoena.  The Commission is conducting this investigation for the proper purpose of investigating potential violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  The Commission issued the subpoena to Kielbasa in accordance with required administrative procedures.  And, Kielbasa's testimony is relevant to this securities law enforcement investigation.

As set forth in Part II, Kielbasa's refusal to provide testimony on some unnamed, unspecified constitutional right is not a valid assertion of privilege.  Kielbasa's steadfast refusal to identify the Self-Incrimination Clause as the basis of his privilege means that he has not invoked its protections.  His further failure to invoke any other valid basis for refusing to answer

questions means that he is subverting this enforceable subpoena without legal justification.  This Court should therefore enter an order compelling Kielbasa either (i) to testify, or (ii) to object on the basis of the Fifth Amendment's right against self-incrimination or some other *valid* legal privilege.

## I.   THE COURT SHOULD ENFORCE THE SUBPOENA

To enforce an administrative subpoena, a court must be satisfied that: (1) the inquiry is being conducted for a proper purpose; (2) the subpoena was issued in accordance with the required administrative procedures; and (3) the information sought is relevant to that legitimate purpose.  *See, e.g., United States v. Powell*, 379 U.S. 48, 57-58 (1964) (enforcing administrative subpoena); *see also SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975) (applying the *Powell* standard and enforcing SEC administrative subpoena in District of Massachusetts).

Once the Commission meets these criteria, the Respondent bears the burden of establishing that the Commission's purpose was unlawful or its subpoena unreasonable.  *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978) (enforcing SEC subpoena where respondent did not demonstrate that subpoena was an unreasonable burden); *Howatt*, 525 F.2d at 229 (enforcing SEC subpoena where respondent did not demonstrate that agency was acting in bad faith); *SEC v. Murray Dir. Affiliates, Inc.*, 426 F. Supp. 684, 686 (S.D.N.Y. 1976) (enforcing SEC subpoena where "it would not be abusive for this court to compel compliance").

The First Circuit has recognized that Congress committed securities investigations to the Commission and "it is not the court's role to intrude into the [Commission's] function."  *Howatt*, 525 F.2d at 229.  As a result, the Respondents' burden of showing unreasonableness "is not easily met."  *SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973) (refusing respondent's request for the court to determine whether subject of inquiry was within SEC's

jurisdiction and enforcing SEC subpoena where the inquiry was for a legitimate purpose and the information sought was relevant to the inquiry).  Here, the Commission's subpoena satisfies all applicable standards, and Respondent cannot meet his burden of demonstrating that the Commission's actions are unreasonable or unlawful.

### A.    The Commission's inquiry is for a proper purpose

Section 21(a) of the Exchange Act authorizes the Commission to conduct investigations into possible violations of the federal securities laws.  This investigation is being conducted pursuant to the Formal Order issued by the Commission pursuant to that Section.  Accordingly, this investigation is lawful and falls within the scope of authority that Congress has granted to the Commission.  *See SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (recognizing the scope of Commission's authority under §21(a) of the Exchange Act).

### B.    The subpoena satisfies all administrative requirements

The subpoena issued to the Respondent satisfies all applicable administrative requirements.  Pursuant to Section 21(b) of the Exchange Act, officers designated by the Commission are empowered to subpoena witnesses and require the production of relevant evidence.  William Donahue, who is a staff attorney in the Commission's Boston Regional Office, issued the subpoenas to the Respondent and was specifically empowered by the Formal Order with authority to subpoena witnesses and documents in connection with this investigation. *Donahue Decl.*, ¶ 3 & Ex. 1.

### C.    The Commission is seeking relevant information

For purposes of subpoena enforcement, relevance is established when the information sought is not "plainly incompetent or irrelevant for any lawful purpose."  *Arthur Young & Co.*, 584 F.2d at 1029 (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)).  The

court in *Arthur Young* held that "the test is relevance to the specific purpose, and the purpose is determined by the investigators." 584 F.2d at 1031.

Here, the information sought by the Commission is directly relevant to the Commission's ongoing investigation of potential securities laws violations. The Respondent appears to have purchased Bancorp stock, for the first time ever, on April 12 and 15, 2011, following cell phone communications with *Board Member A* during the merger acquisition due diligence and negotiation process that preceded Bancorp's acquisition. *Donahue Decl.*, ¶¶ 8-13. Among other things, Kielbasa's testimony will help the Commission staff to determine (1) his reason(s) for purchasing Bancorp stock on April 12 and 15, 2011, (2) the substance of his cell phone communications with *Board Member A*, and (3) the reason(s) he used two different brokerage accounts to buy the same stock. This subpoenaed testimony is directly relevant to the Commission's investigation of possible violations of Section 10(b) and Rule 10b-5.

## II.   THE COURT SHOULD ORDER RESPONDENT KIELBASA TO TESTIFY OR TO ASSERT A VALID RIGHT NOT TO DO SO

Respondent Kielbasa has refused to provide testimony, but in doing so has refused to rely on any specific clause of the Constitution that would permit him to do so. His refusal to name any specific right under the Fifth Amendment is a transparent attempt to avoid invoking the Self-Incrimination Clause. Invocation of this right against self-incrimination may give rise to an "adverse inference," which the Commission could later use as evidence against Kielbasa. *See SEC v. Cassano*, No. 99 CIV. 3822(LAK), 2000 WL 1512617, at *2 & n.1 (S.D.N.Y. Oct. 11, 2000); *SEC v. Herman*, No. 00Civ.5575(PKC)(MHD), 2004 WL 964104, at *7 (S.D.N.Y. May 5, 2004). Kielbasa's apparent legal strategy is to attempt to avoid this adverse inference by avoiding mention of the Self-Incrimination Clause and invoking only the Fifth Amendment generally, without reliance on any particular clause. As set forth below, this tactic of relying on

some unnamed piece of the Fifth Amendment or the Constitution generally has been rejected by other courts, and it should be rejected here.

### A.  Kielbasa's steadfast refusal to specify any right within the Fifth Amendment was not an implied invocation of the Self-Incrimination Clause

To be clear, Kielbasa was not using "Fifth Amendment" as some short-hand reference for the Self-Incrimination Clause.  It was the opposite.  He was avoiding it.

In the morning before Kielbasa's testimony, counsel for both parties spoke on the telephone concerning the specific issue of Kielbasa's intent to refuse answering questions.  On the call, Commission counsel informed Kielbasa's attorney that if his client planned to refuse answering questions based on the Fifth Amendment, he would need to invoke a valid privilege, such as the one granted by Self-Incrimination Clause.  When Kielbasa arrived and gave only a vague reference to the Fifth Amendment, Commission counsel specifically asked Kielbasa to identify the constitutional right on which he relied to refuse providing testimony.  He refused to do so.  Kielbasa and his attorney took a break to think about the issue.  They returned, and Kielbasa continued to refuse to identify any specific constitutional right.  There was no misunderstanding as to Respondent Kielbasa's intent.  He and his counsel were trying to avoid invoking the Self-Incrimination Clause.

When a witness provides only a vague reference to the Fifth Amendment in refusing to answer questions, the proper procedure is to ask the witness to state the basis of his constitutional objection.  *See Quinn v. United States*, 349 U.S. 155, 164-65 (1955) (explaining inquiry to be made where language used to invoke privilege is "not free from doubt").  If the witness thereafter refuses to state that he relies on the Self-Incrimination Clause, then the protections of that clause have not been invoked.  *Id*.  That is exactly what happened here.  When confronted with Kielbasa's vague reference to the Fifth Amendment, Commission counsel asked for the

specific basis of the constitutional objection.  Kielbasa and his counsel then took a break to

discuss the matter.  Thereafter, on the advice of his counsel, Kielbasa refused to invoke the Self-

Incrimination Clause.  This considered action constitutes a deliberate decision not to invoke the

Self-Incrimination Clause.

### B.     Kielbasa's reliance on some unspecified constitutional right does not assert a valid privilege

On the advice of counsel, Kielbasa deliberately left his purported constitutional privilege

vague and undefined.  Vague references to the Constitution, however, are not sufficient to invoke

valid privilege.  As a District Court  for the Southern District of Florida explained in *Butterworth*

*v. Southland Corporation*, 684 F. Supp. 292, 294 (S.D. Fla. 1988), where the witness is

represented by counsel and is asked to identify the constitutional right asserted, the assertion of a

valid privilege requires the witness to identify the specific right.

In the *Butterworth* decision, a witness in a deposition refused to answer any questions

under a "privilege under the State and Federal Constitutions and any and all amendments,"

which he and his counsel refused to further identify.  *Butterworth*, 684 F. Supp. at 293.  Despite

repeated attempts by the plaintiff's lawyer to get the witness and his lawyer to identify a specific

privilege, they both refused.  *Id.*

When the matter came to the court for a hearing, the witness and his counsel conceded

they were wrong, and agreed they had to disclose the specific privilege on which they were

relying.  *Id.* at 294.  As the District Court noted, "In light of the prevailing case law, [their]

concession was appropriate."  *Id.*  "A witness must state the specific basis for objection on the

record, *e.g.*, 'Fifth Amendment privilege against self-incrimination.'"  *Id.*

The present circumstances are a perfect match to the *Butterworth* decision.  Kielbasa was

asked repeatedly to identify the specific constitutional basis for his refusal to provide testimony.

If he intended to assert the protections of the Self-Incrimination Clause or any other valid right under the Constitution, he was required to say so.

### C. The Commission needs to know the basis of Kielbasa's privilege to assess its validity and avoid later assertion of an invalid privilege

Requiring Kielbasa to name his purported constitutional privilege for refusing to provide testimony is not a meaningless matter of semantics.  The Commission must be apprised of the specific basis of the privilege in order to assess its validity.  If Respondent Kielbasa is allowed to leave his privilege unnamed, he can spend an entire day refusing to answer questions and only later reveal an invalid basis for asserting his privilege.  This would force the Commission to retake his testimony weeks or months later, wasting significant time and expense.

It is not uncommon for witnesses in Commission investigations, like Kielbasa, to assert baseless or invalid privileges in order to avoid invoking the Self-Incrimination Clause.  Witnesses have refused to provide testimony based on unspecified Constitutional rights or argued that Commission documents gave them certain rights and privileges to refuse to answer questions.  *See SEC v. Shanahan*, 504 F. Supp.2d 680 (E.D.Mo. 2007); *SEC v. Sears*, Civ. No. 05-728-JE, 2005 WL 5885548 (D.Or. 2005).  For example, the witnesses in the *Sears* case, like Kielbasa, told the SEC that they were refusing to answer questions based on an assertion of "rights under the Fifth Amendment, but not the privilege against self-incrimination." *Sears*, 2005 WL 5885548, at *2.  They then attempted to argue that the Commission's form 1662, a form document given to all witnesses as a summary explanation of rights in testimony, conferred some additional right to refuse testimony under the Fifth Amendment.  *Id.*  The district court rejected this argument, noting that "the Constitution independently says what it says and grants whatever rights it grants." *Id.* at *3.  "Ultimately, the [witnesses] can either assert a valid Fifth Amendment privilege, or they can choose not to," but they cannot not assert privileges of their

own invention. *Id.*

The *Sears* Court was able to assess the validity of the asserted privilege only because the witnesses named their basis.  In the present situation, however, the Commission and the Court have no way to assess whether Kielbasa is asserting an invalid right, such as the ones asserted in *Sears* and *Shanahan,* because Kielbasa, on the advice of his counsel, has kept his purported basis a secret.  Kielbasa has no legal right to assert a privilege to be named later.  And, the Commission should not be forced to run the entire testimonial course before finding out whether the asserted privilege is valid or not.

## III.    THE COURT SHOULD GRANT THE COMMISSION'S APPLICATION EXPEDITIOUSLY

The Commission has already delayed Respondent's testimony for over eight weeks in an attempt to accommodate his counsel.  Time is of the essence in this ongoing insider trading investigation.  Because Kielbasa refused to testify substantively and refused to assert any valid privilege, the Commission staff is presently unable to obtain testimony from Kielbasa necessary to proceed with a substantial aspect of the Commission's investigation.

In recognition of the need for expeditious action, Commission subpoena enforcement proceedings are generally summary in nature.  *See, e.g., SEC v. Sprecher*, 594 F.2d 317, 319-320 (2nd Cir. 1979); *SEC v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 168 (10th Cir. 1971).  As the Court of Appeals for the Second Circuit stated in *U.S. v. Davey*, "[W]e take this occasion to stress again the desirability of expediting resolution of any question concerning the validity of subpoenas and the production of evidence in the district court as well as on the appellate level. These matters should be given precedence over other business."  426 F.2d 842, 845 (2d Cir. 1970) (discussing IRS summons).  Accordingly, the Commission respectfully requests that the Court act expeditiously to grant this Application and the requested relief.

## CONCLUSION

The assertion of a constitutional right not to testify is not some cat-and-mouse guessing game. *Quinn v. United States*, 349 U.S. 155, 164-65 (1955). When a witness represented by competent counsel is requested to specify the Constitutional basis for a privilege, he either does so or no valid privilege has been asserted. Kielbasa refused to provide testimony. On the advice of his counsel, he further refused to provide the specific constitutional basis for his refusal to testify. He is therefore in unlawful breach of his testimonial obligation under this validly issued subpoena.

For the reasons stated above, the Commission requests that its Application be granted in all respects and that this Court enter: (1) an Order to Show Cause why Respondent should not comply with the administrative subpoena; and (2) an Order compelling Respondent to appear for testimony in the Commission's Boston Regional Office and further to provide testimony or assert a specific, valid legal right or privilege not to do so.

Respectfully submitted,

//s// R.M. Harper II
Richard M. Harper II (BBO No. 634782)
William J. Donahue (BBO No. 631229)
U.S. SECURITIES AND EXCHANGE
COMMISSION
33 Arch Street
Boston, Massachusetts 02110-1424
Ph: (617) 573-8979 (Harper)
HarperR@sec.gov, DonahueW@sec.gov

Counsel for Applicant
Securities and Exchange Commission

Dated: May 1, 2013

<u>Certificate of Service</u>

      I, Richard M. Harper, hereby certify that on May 1, 2013, I caused a true copy of the foregoing document to be served via electronic and overnight mail upon the following persons:

Mark D. Smith, Esq.
Laredo & Smith, LLP
101 Federal Street, Suite 650
Boston, Massachusetts  02110


                      //s//R.M. Harper II
                      Richard M. Harper II

Dated: May 1, 2013