**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Applicant, | ) No. ) |
| v. | ) ) |
| ROBERT KIELBASA, Respondent. | ) ) ) ) |

## DECLARATION OF WILLIAM J. DONAHUE

I, William J. Donahue, Esq., pursuant to 28 U.S.C. § 1746, hereby declare that:

1.      I am an attorney and a member in good standing of the bar of the Commonwealth of Massachusetts. I am a Senior Counsel in the Enforcement Division of the Boston Regional Office of the U.S. Securities and Exchange Commission (the "Commission"). I am participating in a Commission investigation In the Matter of Bancorp Rhode Island, Inc., (B-02735) that began on or around June 27, 2012. I make this declaration in support of the Commission's Application for Order to Show Cause and for Order to Comply with Administrative Subpoenas.

2.      This declaration is based upon information that the Commission staff has obtained from various sources, described more fully below, during the course of the Commission investigation into the activities surrounding the announcement of a proposed merger between Bancorp Rhode Island, Inc. ("Bancorp") and Brookline Bancorp, Inc. ("Brookline Bank"), in April 2011. I believe all statements made on information and belief to be true.

The Commission Investigation

3.      On June 27, 2012, pursuant to Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), the Commission issued an Order Directing Private Investigation and

Designating Officers to Take Testimony ("Formal Order") in an investigation entitled In the Matter of Bancorp Rhode Island, Inc., File No. B-02735.  Among other things, the Formal Order directed that an investigation be undertaken to determine whether certain persons or entities had violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder in connection with the purchase or sale of securities in Bancorp.  Specifically, the Commission has information that tends to show that certain persons or entities may have been engaging in insider trading of Bancorp securities.  The Formal Order designated certain officers of the Commission as having power to subpoena witnesses for documents and testimony.  The Formal Order was amended on February 6, 2013 to designate an additional officer of the Commission.  See Exhibits 1 and 2.

4.      Upon his request, a copy of the Formal Order and Supplemental Order were provided to counsel for Respondent, Robert Kielbasa ("Kielbasa") on March 22 and 25, 2013.

5.      The SEC is investigating possible insider trading in the stock of Bancorp, a Rhode Island corporation with a principal place of business in Providence, Rhode Island.  As of April 2011, Bancorp's stock was publicly traded and listed on the NASDAQ Stock Market with the ticker symbol, BARI.  On April 19, 2011, Bancorp entered into a definitive merger agreement with Brookline Bank, whereby Brookline Bank would acquire Bancorp in a merger transaction.  The transaction was unanimously approved by both companies' Boards of Directors.

6.      Bancorp announced this merger acquisition agreement to the investing public on the morning of April 20, 2011, at approximately 8:26 a.m., or approximately an hour before the start of NASDAQ market hours, at 9:30 a.m.  On the day of the public announcement, the price of BARI stock closed at $44 per share, an increase of $13.29 or 44% from the previous day's closing price.

7.    This investigation concerns the possible misappropriation of material, non-public information concerning the potential acquisition of Bancorp by a member of its Board of Directors, hereinafter, *Board Member A,* and several of his friends and relatives.  In February or early March 2011, Bancorp management advised its Board of Directors, including *Board Member A*, that the company had engaged a Wall Street investment bank to seek out business opportunities, including possible mergers with other banks.  On March 28, 2011, the Bancorp Board of Directors, including *Board Member A*, reviewed two indications of interest to acquire Bancorp, including one from Brookline Bank, the eventual acquirer, to buy the company at a price ranging from $40 to $48 per share.  For the next two weeks, Bancorp and the two potential suitors (as well as their legal and investment advisers) engaged in due diligence and planning meetings.

8.    On April 12, 2011, Brookline Bank and another bank each submitted revised oral indications of interest based upon their respective due diligence reviews, which were presented to Bancorp through a Bancorp strategic committee.  Brookline Bank had increased its proposed purchase price to $48.25 per share, to be paid approximately 50% in cash and 50% in Brookline Bank common stock, with a fixed exchange ratio for the stock consideration to be set based upon the average closing price of Brookline common stock for the five trading day period ending on the day before the date of the merger agreement.

9.    On April 14, 2011, the Bancorp Board of Directors met to review the revised indications of interest. Following the meetings, Bancorp and Brookline Bank, and their legal counsels continued to work to complete negotiations with respect to a definitive merger agreement and to prepare related disclosure schedules.  On April 18, 2011, Brookline Bank verbally confirmed its offer of $48.25 per share.

3

10.    On April 19, 2011, the Bancorp Board of Directors held a special meeting to review and consider the proposed transaction with Brookline Bank.  Following a discussion of the merger agreement and related matters, the Bancorp Board of Directors voted unanimously to recommend that its shareholders approve the merger agreement.

11.    Following the announcement of the Bancorp acquisition transaction, the Commission received information concerning six individuals who made suspiciously well-timed purchases of Bancorp stock during the due diligence and negotiation process preceding the company's acquisition.  All six of these individuals have been identified as relatives, friends and/or close business associates of *Board Member A*.  The Commission is currently investigating whether these investors received material, non-public information from *Board Member A* concerning Bancorp's impending acquisition.

12.    Information received during the investigation to date reveals that Kielbasa is one of these six individuals.  In April 2011, *Board Member A* and Kielbasa had known each other for approximately 11 years.  They were business partners in a number of real estate investments located in Rhode Island and Florida.  Although Kielbasa had an investment adviser through which he maintained an open brokerage account, Kielbasa had never previously invested in Bancorp stock, and his adviser had never suggested it to him as an investment.  On Tuesday, April 12, 2011, however, after a brief call to *Board Member A*'s cell phone, Kielbasa called his investment adviser and instructed him to buy 1,000 shares of Bancorp stock.  The adviser did as instructed.  This was Kielbasa's first time ever purchasing stock in Bancorp.  Three days later, on Friday April 15, 2011, after another call to *Board Member A*'s cell phone, Kielbasa again called his investment adviser to place another order to buy 1,000 Bancorp shares, which his adviser fulfilled.  On the same day, Kielbasa later called a different registered representative at

4

another financial institution in New York and instructed him to buy 1,000 shares of Bancorp stock for an account in the name of a business that is owned by Kielbasa.

13.     Based on this and other information, the staff at the SEC has been authorized to investigate possible violations of Section 10(b) of the Exchange Act and Rules 10b-5 thereunder.

The Commission Subpoena to Kielbasa

14.     In the course of its investigation to date, the staff has subpoenaed a number of entities for documents and testimony.  On January 22, 2013, based on the subpoena authority vested in the Formal Order, I issued a testimony subpoena to Kielbasa for him to appear before officers of the Commission on February 26, 2013.  Accompanying the subpoena was a copy of the Commission's Background Questionnaire, which requested a return date of February 25, 2013.  See Exhibit 3.

15.     After serving the subpoena, I received a call form an attorney representing Kielbasa, who requested a delay of the scheduled testimony, which was granted.  Upon further requests from counsel, Kielbasa's testimony was continued an additional two times.[1]

16.     On April 3, 2013, I called Kielbasa's counsel and requested Kielbasa's completed Background Questionnaire, which had not yet been returned to the staff.  During this discussion, I inquired with Kielbasa's counsel whether his client intended to answer questions substantively or whether he would be asserting his Fifth Amendment rights.  Counsel stated that the issue had not yet been addressed and that many times he does not decide to make any decision regarding recommending a client asserting Fifth Amendment rights until shortly before testimony.

---

[1] Kielbasa's testimony was initially rescheduled to March 28, 2013, but was then rescheduled again to April 12, 2013 and finally, April 23, 2013.

Counsel informed me that if his client decided to assert his Fifth Amendment rights, he would try to give advance notice to the staff.

17.     On the morning of April 22, 2013, after not receiving the completed responses to the Background Questionnaire, I once again contacted Kielbasa's counsel.  At that time, counsel reported that he was still not sure if his client would be testifying substantively.  Counsel indicated that he would be meeting with Kielbasa later in the day and that he would update the staff after his meeting.  Late in the afternoon, at 5:20 pm, counsel contacted me and reported that he expected his client to be asserting his Fifth Amendment rights in the morning.  Counsel then informed me that he would contact the staff again in the morning if he had any other questions.

18.     On April 23, 2013, approximately 35 minutes before testimony was to begin, counsel for Kielbasa telephoned me and reported that he was on his way over with his client.  Counsel confirmed that his client would be asserting his Fifth Amendment rights during his questioning.  Counsel then asked how I expected the process would work.  I informed counsel that we would want the witness to specify the basis for which he would be asserting his Fifth Amendment rights, i.e. the Self-Incrimination Clause.  Once established, we could then recognize a short form response Kielbasa could use in place of having to reassert any lengthy prepared response over the course of questioning.

19.     In response, counsel asked, "you are going to make us do all of that?" or words to that effect.  When I confirmed that we would require the basis for Kielbasa's assertion of his Fifth Amendment rights to be stated on the record, counsel simply responded, "this ought to be interesting," or words to that effect.

20.     Kielbasa's testimony began shortly after 10:00 am on April 23, 2013.  When asked why he did not complete the Background Questionnaire, Kielbasa replied, "[u]pon advice

of counsel, I am asserting the rights and privileges guaranteed under the Fifth Amendment to the United States Constitution." See Exhibit 4 at 8:18-22.

21.     As a follow-up, Commission counsel asked Kielbasa to state the specific right being asserting under the Fifth Amendment. He refused to respond. After a short recess to speak with counsel, the witness still refused to rely on any specific right under the Fifth Amendment. See Exhibit 4 at 9:4 – 10:3.

22.     The staff marked a copy of the language of the Fifth Amendment to the United States Constitution as an exhibit, placed it before the witness and asked Kielbasa to identify with a highlighter "the specific right [he] was relying on to not answer questions today." Counsel advised Kielbasa not to respond to the question. See Exhibit 4 at 10:18-11:3.

23.     Once again, Commission counsel requested the witness specify the right being asserted under the Fifth Amendment, which Kielbasa refused to provide. Instead, Kielbasa repeated his prepared response. Kielbasa's counsel then stated that his client did not have to identify any particular right under the Fifth Amendment in refusing to provide testimony. See Exhibit 4 at 11:8 -- 12:1-3.

24.     At that point, the parties were at an impasse concerning whether Kielbasa was invoking a valid privilege not to provide testimony. Commission counsel then suspended testimony for the purpose of seeking judicial assistance. See Exhibit 4 at 13:3-10.


Executed this 30th day of April, 2013, in Boston, Massachusetts.


William J. Donahue, Esquire

7

Certificate of Service

I, Richard M. Harper, II, hereby certify that on May 1, 2013, I caused a true copy of the foregoing document to be served via electronic and overnight mail upon the following persons:

Mark D. Smith, Esq.
Laredo & Smith, LLP
101 Federal Street, Suite 650
Boston, MA 02110

Richard M. Harper, II

Dated: May 1, 2013

# EXHIBIT 1

# NON-PUBLIC

## UNITED STATES OF AMERICA
Before the
## SECURITIES AND EXCHANGE COMMISSION
June 27, 2012

In the Matter of

**Bancorp Rhode Island, Inc.**

B-02735

**ORDER DIRECTING PRIVATE
INVESTIGATION AND DESIGNATING
OFFICERS TO TAKE TESTIMONY**

### I.

The Commission's public official files disclose that:

A.    Bancorp Rhode Island, Inc, ("BARI") was a Rhode Island corporation headquartered in Providence, Rhode Island. BARI's common stock was registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and traded on the NASDAQ. BARI filed periodic reports, including Forms 10-K and 10-Q, with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder. On January 9, 2012, BARI, through Brookline Bancorp, Inc, as successor by merger to BARI, filed with the Commission a Form 15 Certification and Notice of Termination of Registration under Section 12(g) of the Exchange Act.

### II.

The Commission has information that tends to show that from at least March 1, 2011 to April 20, 2011:

A.    In possible violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, certain traders, their officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, in connection with the purchase or sale of certain securities, may have been employing devices, schemes, or artifices to defraud, engaging in transactions, acts, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon any person. As part of or in connection with these activities, such persons or entities, directly or indirectly, may have been engaging in insider trading in the securities of Bancorp Rhode Island, Inc.

B.    While engaged in the above-described activities, such persons or entities, directly or indirectly, may have been making use of any means or instruments of transportation or

communication in interstate commerce, or of the mails, or of any facility of any national securities exchange, and may have been making use of the mails or any means or instrumentality of interstate commerce.

## III.

The Commission, deeming such acts and practices, if true, to be possible violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder finds it necessary and appropriate and hereby:

ORDERS, pursuant to the provisions of Section 21(a) of the Exchange Act that a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object; and

FURTHER ORDERS, pursuant to the provisions of Section 21(b) of the Exchange Act that for purposes of such investigation, David P. Bergers, John T. Dugan, Martin F. Healey, Philip C. Koski, Celia D. Moore, LeeAnn G. Gaunt, Kevin M. Kelcourse, Paul G. Block, Michelle T. Perillo, William J. Donahue, Robert B. Baker, Sheila D'Entremont, Elizabeth Bond, and each of them, are hereby designated as officers of the Commission and are empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[1]

Elizabeth M. Murphy
Secretary

By: Jill M. Peterson
Assistant Secretary

---

[1] 17 CFR 200.30-4(a)(13)

# EXHIBIT 2

**NON-PUBLIC**

**UNITED STATES OF AMERICA**
Before the
**SECURITIES AND EXCHANGE COMMISSION**
February 6, 2013

| | |
|---|---|
| In the Matter of<br><br>    Bancorp Rhode Island, Inc.<br><br>B-02735 | **SUPPLEMENTAL ORDER<br>DESIGNATING AN ADDITIONAL<br>OFFICER** |

IT IS ORDERED that the order of the Commission adopted on June 27, 2012, authorizing a private investigation of the above captioned matter, based upon possible violations of the provisions of the federal securities laws, be and it is hereby amended by designating as an additional officer of the Commission, Richard M. Harper.

For the Commission, pursuant to delegated authority, by the Division of Enforcement.[1]

Elizabeth M. Murphy
Secretary

By: Jill M. Peterson
Assistant Secretary

---

[1] 17 C.F.R. 200.30-4(a)(1).

# EXHIBIT 3



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch St., 23rd Floor
Boston, MA 02110-1424
Telecopier: (617) 573-4590

**DIVISION OF ENFORCEMENT**

William J. Donahue
Senior Counsel
(617) 573-8915
donahuew@sec.gov

January 22, 2013

**First Class Mail and
UPS Overnight Delivery**

Mr. Robert Kielbasa
1272 W. Main Road
Middletown, RI 02842-6335

Re:   In the Matter of Bancorp Rhode Island, Inc. (B-02735)

Dear Mr. Kielbasa:

The staff of the Boston Regional Office of the United States Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to give sworn testimony on Tuesday, February 26, 2013 at 10:00 a.m. at the above address.

A background questionnaire is also enclosed. During your testimony, the staff intends to ask background questions concerning, among other things, your residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that you complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your testimony. We request that the background questionnaire be completed and returned to the Commission by Monday, February 25, 2013 by 3:00 p.m.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. You must comply with the subpoena. You may be subject to a fine and/or imprisonment if you do not.

The information you provide is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copy of SEC Form 1662, which also contains other important information. This investigation is confidential and nonpublic and should not be construed as either an indication by the Commission or its staff that any violation of law has occurred, or as a reflection upon any person, entity, or security.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. Your lawyer may also advise and accompany you when you testify. We cannot give you legal advice.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If you have any questions you may call me at (617) 573-8915 or my paralegal, Jason Farrell at (617) 573-4594. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

William J. Donahue
Senior Counsel
Division of Enforcement

Enclosures:    Subpoena
SEC Form 1662
Background Questionnaire



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Bancorp Rhode Island, Inc. (B-02735)**

To:     Mr. Robert Kielbasa
        1272 W. Main Road
        Middletown, RI 02842-6335

☐    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the
     Securities and Exchange Commission, at the place, date and time specified below:

☒    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place,
     date and time specified below:

     Securities and Exchange Commission, Boston Regional Office, 33 Arch Street, 23rd floor,
     Boston, Massachusetts  02110, February 26, 2013 at 10:00 a.m.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:                                                    Date:   *1-22-2013*

William J. Donahue, Senior Counsel
U.S. Securities and Exchange Commission
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this
matter.  The Securities and Exchange Commission has issued a formal order authorizing this investigation
under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply
### Information Voluntarily or Directed to Supply Information
### Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (09-11)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*.  If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation.  Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding.  Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner.  It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto.  Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him.  This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings.  That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA.  That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena*.  The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily*. One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

2

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

## F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

## G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

3

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

4

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

## BACKGROUND QUESTIONNAIRE

**Please respond to the following questions in the space provided. If you need additional space for any response, you may attach additional pieces of paper.**

Today's date: _____

1. What is your full name?

   _____

2. Have you ever been known by any other name?  Yes __ No __

   If yes, list each such name and the period(s) in which you were known by that name.

   _____
   _____
   _____

3. Social Security Number? _____

4. Date and Place of Birth?

   _____

5. Country of Citizenship?

   _____

6. Marital Status?  Married __ Divorced __ Single __

   If you have ever been married, state for each marriage: (i) the date(s) of the marriage; (ii) the name of your spouse; and (iii) your spouse's maiden name, if any.

   _____
   _____
   _____

7. List the names, ages and occupations of your children, if any.

   _____
   _____
   _____
   _____

Background Questionnaire
Page 2

8.   List all residences you occupied at any time during the last three years, including vacation homes, beginning with your current residence. For each residence, state the address, dates of residence, and all telephone numbers (including facsimile numbers) listed at that address.

_____

_____

_____

9.   List all telephone numbers and telephone credit card numbers that were in your name or that you regularly used at any time during the last three years. Include all residential, business, car, credit card and cellular telephone numbers, including those listed in your response to question 8. For each telephone number, state the name(s) of the corresponding long distance carrier(s) (e.g., Sprint, MCI, AT&T), if any.

_____

_____

## PUBLICLY-HELD COMPANIES

10.   Are you now, or have you ever been, an officer or director of any publicly-held company? Yes ___ No ___

If yes, identify each such company and state your positions and the dates you held each position.

_____

_____

11.   Are you now, or have you ever been, a beneficial owner, directly or indirectly, of five per cent or more of any class of equity securities of any publicly held company? Yes ___ No ___

If yes, identify each such company, and state the amount, percentage, and dates of your ownership.

_____

_____

Background Questionnaire
Page 3

## SECURITIES ACCOUNTS

12.  List all securities or brokerage accounts that you have held in your name, individually or jointly, at any time during the last three years. Include all foreign accounts. For each such account, identify: (i) the brokerage firm; (ii) the location of the branch where your account is or was held; (iii) your broker; (iv) the type of account (i.e., cash, margin or IRA); and (v) whether any person has ever held discretionary authority or power of attorney over the account; if so, name such person(s).

_____

_____

_____

_____

13.  List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 12, in which you had any direct or indirect beneficial interest at any time during the last three years. For each such account, provide the information requested by question 12.

_____

_____

_____

_____

14.  List all securities or brokerage accounts (including foreign accounts), other than those listed in your answer to question 12 or 13, over which you had any control at any time during the last three years. For each such account, provide the information requested by question 12.

_____

_____

_____

_____

Background Questionnaire
Page 4

## BANK ACCOUNTS

15.     List all accounts you have held in your name at any financial institution (i.e., bank, thrift, or credit union) at any time during the last three years. Include all foreign accounts. For each such account, identify: (i) the financial institution; (ii) the address of the branch at which your account is or was held; (iii) the type of account (i.e., checking, savings, money market or IRA); and (iv) whether any person has ever had discretionary authority or power of attorney over the account; if so, name such person(s).

_____

_____

_____

_____

16.     List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 15, in which you had any direct or indirect beneficial interest at any time during the last three years. For each such account, provide the information requested by question 15.

_____

_____

_____

_____

17.     List all accounts at financial institutions (including foreign accounts), other than those listed in your answer to question 15 or 16, over which you had any control at any time during the last three years. For each such account, provide the information requested by question 15.

_____

_____

_____

_____

Background Questionnaire
Page 5

## PRIOR PROCEEDINGS

18.   Have you ever testified in any proceeding conducted by the staff of the Securities and
      Exchange Commission, a federal or state agency, a federal or state court, a stock
      exchange, the National Association of Securities Dealers ("NASD") or any other self-
      regulatory organization ("SRO"), or in any arbitration proceeding related to securities
      transactions? Yes __ No __

      If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the
      organization or agency; and (iii) the date(s) on which you testified.

      _____
      _____
      _____

19.   Have you ever been deposed in connection with any court proceeding? Yes __ No __

      If yes, for each such proceeding, identify: (i) the title of the proceeding, and (ii) the
      date(s) on which you were deposed.

      _____
      _____
      _____

20.   Have you ever been named as a defendant or respondent in any action or proceeding
      brought by the SEC, any other federal agency, a state securities agency, the NASD or any
      stock exchange? Yes __ No __

      If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the agency or
      tribunal; (iii) the substance of the allegations; (iv) the outcome of the proceeding; and (v)
      the date of the outcome.

      _____
      _____
      _____

Background Questionnaire
Page 6

21.  Have you ever been a defendant in any action (other than those listed in response to question 20) alleging violations of the federal securities laws?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____
_____

22.  Have you ever been a defendant in any criminal proceeding other than one involving a minor traffic offense?  Yes __  No __

If yes, for each such proceeding, identify: (i) the title of the proceeding; (ii) the court or tribunal; (iii) the outcome of the proceeding; and (iv) the date of the outcome.

_____
_____
_____

## EDUCATIONAL HISTORY

23.  Provide the requested information about each educational institution that you have attended beyond junior high school, beginning with the most recent and working backward to the date that you completed high school.

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

Background Questionnaire
Page 7

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

| Name of School | | | |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Attendance: Month/Year to Month/Year | | Degree/Major | Month/Year of Degree |

24.  Other than courses taken in connection with institutions listed in response to question 23, list any securities or business related courses taken since high school. For each such course, identify the date that the course was completed and the name of the institution or organization that offered the course.

_____

_____

_____

_____

## PROFESSIONAL LICENSES/CLUBS

25.  Do you hold, or have you ever held, any professional license? Yes__ No__

If yes, for each such license, identify: (i) the license; (ii) the licensing organization; (iii) the date the license was awarded; (iv) the date such license terminated, if applicable; (v) the date(s) of any disciplinary proceeding(s) against you: and (vi) the outcome of any such disciplinary proceeding (e.g., reprimand, suspension, revocation).

_____

_____

_____

26.  Are you, or have you ever been, a member of any professional or business club or organization? Yes__ No__

Background Questionnaire
Page 8

If yes, list for each: (i) the name of the club or organization; (ii) its address; and (iii) the date(s) of your membership.

_____

_____

_____

_____

## EMPLOYMENT HISTORY

27.   State your employment activities, beginning with the present and working backward to the date that you completed high school.

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|

Background Questionnaire
Page 9

| Employer's Street Address | | | Telephone Number |
|---|---|---|---|
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

| Employer's Name/Self-Employment | | | Your Title |
|---|---|---|---|
| Employer's Street Address | | | Telephone Number |
| City | State | Country | Zip Code |
| Dates of Employment: Month/Year To Month/Year | | | |

CONTINUE ON ADDITIONAL SHEETS IF NECESSARY

 **Shipment Receipt**

**Transaction Date: 22 Jan 2013**          **Tracking Number:**          1ZA376E10397145673

| 1 | Address Information |
|---|---|

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Mr. Robert Kielbasa | SEC-Boston REGIONAL | SEC-Boston REGIONAL |
| 1272 W. Main Road | Gabrielle Karta | William Donahue |
| MIDDLETOWN RI 028426405 | 33 Arch Street | 33 Arch Street |
| | 23rd FL | 23rd FL |
| | Boston MA 02110 | Boston MA 02110 |
| | Telephone:6175738900 | Telephone:6175738900 |

| 2 | Package Information |
|---|---|

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1.  0.5 lbs <br> (1.0 lbs billable) | Other Packaging | | Reference #1 - B-2735 |

| 3 | UPS Shipping Service and Shipping Options |
|---|---|

| Service: | UPS Ground Service |
|---|---|
| Guaranteed By: | End of Day Wednesday, Jan 23, 2013 |
| Shipping Fees Subtotal: | 6.28 USD |
| Transportation | 5.84 USD |
| Fuel Surcharge | 0.44 USD |

**Additional Shipping Options**

| Quantum View Notify E-mail Notifications: | | No Charge |
|---|---|---|
| 1 Donahuew@sec.gov: | Exception, Delivery | |
| E-mail Failure Notification: | kartag@sec.gov | |

| 4 | Payment Information |
|---|---|

| Bill Shipping Charges to: | Shipper's Account A376E1 |
|---|---|

**A discount has been applied to the Daily rates for this shipment**

| Total Charged: | 6.28 USD |
|---|---|
| Negotiated Total: | 2.41 USD |

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT 4

Page 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:          )
                           ) File No. B-02735-A
BANCORP RHODE ISLAND, INC. )

WITNESS:  Robert J. Kielbasa
PAGES:  1 through 15
PLACE:  Securities and Exchange Commission
        Boston District Office
        33 Arch Street
        Suite 2300
        Boston, Massachusetts
DATE:  Tuesday, April 23, 2013

    The above-entitled matter came on for hearing,
pursuant to notice, at 10:13 a.m.

                Diversified Reporting Services, Inc.
                    (202) 467-9200

---

Page 2

1   APPEARANCES:
2
3
4   On behalf of the Securities and Exchange Commission:
5       WILLIAM J. DONAHUE, ESQ.
6       RICHARD M. HARPER, ESQ.
7       Division of Enforcement
8       Securities and Exchange Commission
9       33 Arch Street
10      Suite 2300
11      Boston, MA  02108
12      (617) 573-8900
13
14
15  On behalf of the Witness:
16      Mark D. Smith, Esq.
17      Laredo & Smith
18      101 Federal St.; Suite 650
19      Boston, MA  02110
20
21
22  Also Present:
23      Jason Farrell, SEC Paralegal
24
25

---

Page 3

1           C O N T E N T S
2
3   WITNESSES                    EXAMINATION
4   Robert J. Kielbasa               4
5
6              EXHIBITS
7   EXHIBITS:    DESCRIPTION          IDENTIFIED
8   36    Background questionnaire        7
9   38    First seven amendments to
10         U.S. Constitution            10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 4

1           P R O C E E D I N G S
2       MR. DONAHUE:  Good morning.  We're on the
3   record.  It's 10:13 on Tuesday, April 23rd.
4       Could the witness please raise his right hand?
5   Do you swear to tell the truth, the whole truth, and
6   nothing but the truth?
7       MR. KIELBASA:  I do.
8   Whereupon,
9           ROBERT J. KIELBASA
10  was called as a witness and, having been first duly
11  sworn, was examined and testified as follows:
12           EXAMINATION
13  BY MR. DONAHUE:
14  Q   Could you please state and spell your full name
15  for the record?
16  A   Robert, R-O-B-E-R-T, John, J-O-H-N, Kielbasa,
17  K-I-E-L-B-A-S-A.
18      MR. DONAHUE:  Mr. Kielbasa, my name is Bill
19  Donahue, and with me this morning is Richard Harper.  We
20  are officers of the Commission for purposes of this
21  proceeding.  Also present in the room today is Jason
22  Farrell.  He's a paralegal here at the SEC.
23      This is an investigation by the United States
24  Securities and Exchange Commission in the matter of
25  Bancorp Rhode Island, matter Number B-02735, and it's to

Page 5

1  determine whether there have been violations of certain
2  provisions of the federal securities laws. However, the
3  facts developed in this investigation might constitute
4  violations of other federal or state civil or criminal
5  laws.
6       Prior to the opening of the record this
7  morning, you and your counsel were provided with a copy
8  of the Formal Order and the Supplemental Formal Order of
9  Investigation in this matter. It will be -- These will
10 be available for your examination during the course of
11 this proceeding. Have you had an opportunity to review
12 the Formal Order?
13      THE WITNESS: I have not.
14      MR. DONAHUE: Why don't you take a moment and
15 go through it if you'd like.
16      THE WITNESS: Okay.
17      MR. DONAHUE: Prior to the opening of the
18 record, you were also provided with a copy of the
19 Commission's Supplemental Information Form, otherwise
20 known as Form 1662. A copy of that notice has been
21 previously marked as Exhibit 1. Have you had the
22 opportunity to review Exhibit 1? I'll add that there was
23 a copy of this also provided in your subpoena.
24      THE WITNESS: Yes.
25      MR. DONAHUE: Do you have any questions

Page 6

1  regarding Form 1662?
2       THE WITNESS: Other than some of it I don't --
3  I don't have questions; I ---
4       MR. SMITH: Do you have questions? That's the
5  only thing he's asking. Do you have any question?
6       THE WITNESS: No.
7       MR. DONAHUE: Mr. Kielbasa, are you represented
8  by counsel today?
9       THE WITNESS: Yes.
10      MR. DONAHUE: Counsel, could you please state
11 your name for the record?
12      MR. SMITH: Mark Smith, Laredo & Smith, 101
13 Federal Street, Boston, Massachusetts 02110.
14      MR. DONAHUE: Mr. Smith, are you representing
15 the witness today as his counsel?
16      THE WITNESS: Yes, I am.
17      MR. DONAHUE: Before we go any further, Mr.
18 Kielbasa, let me remind you and myself that we must speak
19 clearly and one at a time in order to create a clear
20 record. Also, if you do not understand or hear a
21 question that I ask, please ask me to repeat or restate
22 the question. Do you understand this?
23      THE WITNESS: Yes.
24      MR. DONAHUE: Further, the SEC controls the
25 record this morning. If you want to go off the record

Page 7

1  for any reason, to speak with counsel, use the
2  facilities, you must ask me first, and we can take a
3  break at that time. The only caveat to that is if
4  there's a question that's on the table, we'd ask for a
5  response to the question before we take a break.
6       THE WITNESS: Okay.
7       MR. DONAHUE: Lastly, are you on any
8  medication, or do you have any medical condition that
9  affects your ability to understand or recall information?
10      THE WITNESS: No.
11      MR. DONAHUE: Is there any other reason why
12 your memory or ability to testify accurately and
13 completely might not be functioning at full capacity
14 today?
15      THE WITNESS: No.
16      MR. HARPER: Hold on one second. You looked
17 like, in answer to that previous question, you wanted to
18 say something else about your capacity to recall today.
19 Do you want to say something, sir?
20      THE WITNESS: No.
21      (SEC Exhibit No. 36 was marked for
22      identification.)
23 BY MR. DONAHUE:
24 Q  Mr. Kielbasa, I'm showing you what has been
25 marked as Exhibit 36 in this matter. It is a copy of the

Page 8

1  subpoena, dated January 22, 2013. Is this a copy of the
2  subpoena that you are appearing pursuant to here today?
3  A  Yes.
4       MR. DONAHUE: I'll just note for the record
5  that the Commission had originally called for your
6  testimony on February 14th. But by agreement between and
7  among counsel, it's been rescheduled to today, April 23,
8  2013.
9  BY MR. DONAHUE:
10 Q  Accompanying the subpoena that the staff sent
11 to you was a background questionnaire. Did you have an
12 opportunity to complete the background questionnaire, Mr.
13 Kielbasa?
14      MR. SMITH: I'll answer on the behalf of the
15 client. We aren't submitting a background questionnaire
16 today. You can ask him why.
17 BY MR. DONAHUE:
18 Q  Mr. Kielbasa, what is the reason why you did
19 not submit answers to the background questionnaire?
20 A  Upon the advice of counsel, I am asserting the
21 rights and privileges guaranteed under the Fifth
22 Amendment to the United States Constitution.
23 Q  You're refusing to answer the question based on
24 the fact that your answer may tend to incriminate you?
25 A  Upon the advice of counsel, I am asserting the

2 (Pages 5 to 8)

Page 9

1   rights and privileges guaranteed under the Fifth
2   Amendment of the Constitution of the United States.
3       BY MR. HARPER:
4       Q   And what specific right are you asserting?
5   There are several rights under the Constitution,
6   including the takings clause, which have no relevance to
7   today.  So would you please specify the right that you're
8   asserting under the Fifth Amendment?
9       MR. SMITH:  Could I have a minute with my
10  client?
11      MR. HARPER:  You may.
12      MR. SMITH:  Let's go in the hallway.
13      (Off the Record at 10:20 a.m.)
14      MR. DONAHUE:  All right, we'll go back on the
15  record.  A couple points before we begin.  If the
16  witness, in your answers, if you could keep your voice up
17  so that the Court Reporter can hear it, we would
18  appreciate that.  Secondly, I just want to reflect -- the
19  record to reflect that while we were on break -- it is
20  now 10:36 -- that while we were on break, there was no
21  discussion about the facts or circumstances surrounding
22  this investigation; is that correct?
23      MR. SMITH:  Correct.
24      BY MR. DONAHUE:
25      Q   After having an opportunity to speak with your

Page 10

1   counsel, Mr. Kielbasa, do you wish to add anything to
2   your last response?
3       A   No.
4       MR. HARPER:  May I have an exhibit sticker,
5   please?  What's the next number?
6       MR. DONAHUE:  37.
7       MR. HARPER:  Do you have 37 right now?
8       MR. DONAHUE:  Oh, wait a minute, no, it would
9   be 38.  37 is pre-marked.
10      MR. SMITH:  I have 36; do you have 37?
11      MR. DONAHUE:  37 has been pre-marked.
12      MR. SMITH:  Oh, okay.  I haven't seen it yet,
13  right?
14      MR. DONAHUE:  Right.  Correct.
15      (SEC Exhibit No. 38 was marked for
16      identification.)
17      BY MR. HARPER:
18      Q   So Mr. Kielbasa, I'm handing you an exhibit,
19  what's been marked as Exhibit 38, which is a copy of the
20  first seven amendments to the United States Constitution.
21  And if you look at the Fifth, you'll see under it there
22  are several rights that are provided by the Fifth
23  Amendment to the United States Constitution.
24      I'm now handing you an orange highlighter.
25  Would you please highlight the specific right that you

Page 11

1   are relying on to not answer questions here today?
2       MR. SMITH:  I'm going to advise my client to
3   not answer and not reply.  He's here to answer questions.
4   He's not here to do a legal analysis and review the
5   Constitution.  He's asserted his rights and privileges,
6   and he'll continue to assert.  He's not going to -- I'm
7   going to direct him to not answer that question.
8       MR. HARPER:  Mr. Kielbasa, you've been
9   exercising your right today to refuse to answer
10  questions.  Your exercising of that right had to be clear
11  and unequivocal.  And as of right now, it's not clear and
12  unequivocal because you haven't specified for the
13  Commission what right you're asserting under the Fifth
14  Amendment of the Constitution.  Would you please do that
15  today?
16      MR. SMITH:  You can answer the question.
17      THE WITNESS:  This one?
18      MR. SMITH:  Yes.
19      THE WITNESS:  Upon the advice of Counsel, I am
20  asserting the rights and privileges guaranteed under the
21  Fifth Amendment to the United States Constitution.
22      BY MR. HARPER:
23      Q   And what specific right are you asserting under
24  the Fifth Amendment?
25      MR. SMITH:  Counsel, my understanding is, I

Page 12

1   don't believe there's any case law that says he's
2   required to designate which right under the Fifth
3   Amendment of the Constitution.  I haven't seen any.  He's
4   given the Constitution; he's answered your question.  And
5   my advice to him is going to be to continue to the answer
6   the question under the Fifth Amendment.
7       BY MR. HARPER:
8       Q   Mr. Kielbasa, because you're refusing to
9   specify clearly and unequivocally the right that you're
10  asserting under the Fifth Amendment to the Constitution,
11  the Commission is going to be forced to go to Court and
12  institute proceedings in order to force you to identify
13  the right that you are asserting under the Fifth
14  Amendment.  We'll have to suspend proceedings today.  The
15  Commission will incur costs in drafting a subpoena
16  enforcement action and appearing in court.
17      In order to avoid all of that expense and cost,
18  we are asking you to be reasonable, and to identify the
19  right that you are asserting under the Fifth Amendment
20  today.  Would you please do that so that we don't have to
21  incur the expenses and costs in doing this?
22      MR. SMITH:  I would like to just interject that
23  before we engage in that proceeding, we'd be willing --
24  ready, willing and able to answer all the questions you
25  have asserting the various rights that my client has

Page 13

1 under the Constitution.  And if you want to later on go
2 off and go seek an order, feel free to do that.
3      MR. HARPER:  Okay, today, Mr. Kielbasa, we're
4 going to stop taking testimony.  We will be calling you
5 back to complete taking your testimony once we have
6 gotten a court order for you to specify the right that
7 you're asserting so that the Commission can be sure that
8 it understands clearly and unequivocally the rights that
9 you're asserting in order to avoid answering questions.
10 Thank you for coming in today.
11      MR. DONAHUE:  We're off the record.  It is
12 10:40.
13      (Whereupon, at 10:40 a.m., the examination was
14 adjourned.)
15           * * * * *
16
17
18
19
20
21
22
23
24
25

Page 15

1    UNITED STATES SECURITIES AND EXCHANGE COMMISSION
2         REPORTER'S CERTIFICATE
3
4 I, Marianne Kokinis   , reporter, hereby
5 certify that the foregoing transcript of 13 pages is a
6 complete, true, and accurate transcript of the testimony
7 indicated, held on April 23, 2013
8 at    Boston, Massachusetts
9 in the Matter of:
10      Bancorp Rhode Island, Corp              .
11 I further certify that this proceeding was recorded by
12 me, and that the foregoing transcript was prepared by me
13 under my direction.
14
15    Date:  April 26, 2013
16
17    Official Reporter:
18    Diversified Reporting Services, Inc.
19
20
21
22
23       Diversified Reporting Services, Inc.
24       Phone: (202) 467-9200 Fax: (202) 296-9220
25

Page 14

1      PROOFREADER'S CERTIFICATE
2
3 In The Matter of:  BANCORP RHODE ISLAND
4 Witness:     Robert J. Kielbasa
5 File Number:    B-02735-A
6 Date:        Tuesday, April 23, 2013
7 Location:    Boston, MA
8
9      This is to certify that I, Donna S. Raya,
10 (the undersigned), do hereby swear and affirm that the
11 attached proceedings before the U.S. Securities and
12 Exchange Commission were held according to the record and
13 that this is the original, complete, true and accurate
14 transcript that has been compared to the reporting or
15 recording accomplished at the hearing.
16
17 _____  _____
18 (Proofreader's Name)       (Date)
19
20
21
22
23
24
25