UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Applicant, )<br>)<br>v. )<br>)<br>ROBERT KIELBASA, )<br>)<br>Respondent. )<br> ) | No. 13-mc-91093-JLT |

REPORT AND RECOMMENDATION ON SEC'S
APPLICATION FOR ORDER ENFORCING SUBPOENA
[Docket No. 1]

December 3, 2013

Boal, M.J.

The Securities and Exchange Commission ("SEC") seeks an order compelling Robert Kielbasa ("Kielbasa") to either appear for testimony in the SEC's Boston Regional Office or to assert a specific, valid right or privilege not to do so. Docket No. 1.[1] For the following reasons, this Court recommends that the District Court deny the SEC's application.[2]

---

[1] The District Court referred the SEC's application to the undersigned on May 1, 2013. Docket No. 3.

[2] Many courts have treated motions to enforce or quash administrative subpoenas as dispositive motions for purposes of review where the matter involving the subpoena constitutes the entire case before the Court. In re Administrative Subpoena Blue Cross Blue Shield of Massachusetts, Inc., 400 F. Supp. 2d 386, 388-389 (D. Mass. 2005) (collecting cases). Out of an abundance of caution, therefore, the Court issues a report and recommendation in this matter.

1

I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2012, the SEC commenced an investigation into possible insider trading in the stock of Bancorp Rhode Island, Inc. Donahue Aff. at ¶¶ 3, 5.[3] In connection with the investigation, the SEC issued a testimony subpoena to Kielbasa for him to appear before SEC officers on February 26, 2013. Donahue Aff. at ¶ 14. The subpoena was accompanied by a copy of the Commission's Background Questionnaire, which requested a return date of February 25, 2013. Id. and Ex. 3.

After serving the subpoena, William Donahue, Senior Counsel in the Enforcement Division of the SEC's Boston Regional Office, received a call from an attorney representing Kielbasa. Donahue Aff. at ¶ 15. That attorney requested a delay of the scheduled testimony, which was granted. Id. Upon further requests from counsel, Kielbasa's testimony was continued twice. Id.

On April 3, 2013, Donahue called Kielbasa's counsel and requested Kielbasa's completed Background Questionnaire, which had not yet been returned to the SEC. Donahue Aff. at ¶ 16. During that call, Donahue asked whether Kielbasa intended to answer questions or whether he would assert his Fifth Amendment rights. Id. Counsel stated that the issue had not yet been addressed but that if Kielbasa decided to assert his Fifth Amendment rights, he would try to give advance notice to the SEC. Id.

On April 22, 2013, Kielbasa's counsel informed Donahue that he expected Kielbasa to assert his Fifth Amendment rights the next day. Donahue Aff. at ¶ 17.

On April 23, 2013, approximately 35 minutes before testimony was to begin, Kielbasa's counsel telephoned Donahue and confirmed that his client would be asserting his Fifth

---

[3] "Donahue Aff." refers to the Declaration of William J. Donahue. Docket No. 1-2.

Amendment rights during questioning. Donahue Aff. at ¶ 18. Counsel then asked how Donahue expected the process to work. Id. Donahue told counsel that the SEC would want the witness to specify the basis for which he would be asserting his Fifth Amendment rights, i.e., the Self-Incrimination Clause. Id. Once established, the SEC would then recognize a short form response which Kielbasa could use in place of having to reassert any lengthy prepared response over the course of questioning. Id.

Kielbasa's testimony began shortly after 10:00 a.m. on April 23, 2013. Donahue Aff. at ¶ 20. When asked why he did not complete the Background Questionnaire, Kielbasa replied, "[u]pon advice of counsel, I am asserting the rights and privileges guaranteed under the Fifth Amendment to the United States Constitution." Id.; Docket No. 1-2 at 35.

As a follow-up, Donahue asked Kielbasa to state the specific right being asserted under the Fifth Amendment. Donahue Aff. at ¶ 21; Docket No. 1-2 at 36. Kielbasa did not respond. Id. After a short recess to speak with counsel, Kielbasa did not specify the right being asserted under the Fifth Amendment. Id.

Donahue marked a copy of the language of the Fifth Amendment to the United States Constitution as an exhibit, placed it before Kielbasa and asked him to identify with a highlighter "the specific right [he] was relying on to not answer questions today." Donahue Aff. at ¶ 22; Docket No. 1-2 at 36. Counsel advised Kielbasa not to answer. Id.

Donahue again asked Kielbasa to identify the specific right being asserted under the Fifth Amendment but Kielbasa refused to answer. Donahue Aff. at ¶ 23; Docket No. 1-2 at 36. Instead, Kielbasa answered that "[u]pon the advice of Counsel, I am asserting the rights and privileges guaranteed under the Fifth Amendment to the United States Constitution." Id. Donahue then suspended testimony. Donahue Aff. at ¶ 24; Docket No. 1-2 at 37.

On May 1, 2013, the SEC filed the instant application.  Docket No. 1.  Kielbasa filed an opposition on May 10, 2013.  Docket No. 8.  The SEC filed a reply on June 7, 2013.  Docket No. 13.  The Court heard oral argument on July 2, 2013.

II.     ANALYSIS

The SEC asserts that Kielbasa must specify the Fifth Amendment privilege upon which he is relying, i.e., he must specifically state that he is relying on his right against self-incrimination, or the Court must compel Mr. Kielbasa to answer the SEC's questions.  Docket No. 1 at 9-13.  Kielbasa argues that his invocation of the Fifth Amendment privilege was proper and sufficiently definite.  Docket No. 8 at 1.  The Court agrees with Kielbasa's position.

The Fifth Amendment to the U.S. Constitution declares in pertinent part that "[n]o person . . . shall be compelled in any Criminal Case to be a witness against himself."[4]  This privilege may be asserted in a civil or administrative proceeding.  SEC v. Druffner, 517 F. Supp. 2d 502, 510 (D. Mass. 2007).  While it is unconstitutional to draw a direct inference of guilt from silence, the Court, in a civil case, may draw adverse inferences from the failure of proof of the party invoking the Fifth Amendment.  Id. (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)).

The privilege against self-incrimination operates question by question.  United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997) (citation omitted).  "For the privilege to attach, the

---

[4] The entire text of the Fifth Amendment to the U.S. Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

questions and answers need not be directly incriminating.  If a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution, the privilege may be appropriately invoked."  Id. (citing Hoffman v. United States, 341 U.S. 479, 486 (1951); United States v. Johnson, 488 F.2d 1206, 1209 (1st Cir. 1973)).  "In other words, testimony which might lead indirectly to evidence that then could be used in a future criminal prosecution is eligible for Fifth Amendment protection."  Id. (citing Murphy v. Waterfront Comm'n, 378 U.S. 52, 79 (1964)).

"[A] claim of the privilege does not require any special combination of words."  Quinn v. United States, 349 U.S. 155, 162 (1955) (reversing judgment of conviction for refusal to answer questions based on invocation of First and Fifth Amendments).  It is sufficient that the objection be made in any language that may reasonably be understood as an attempt to invoke the privilege.  Id.  Nevertheless, some courts have required a witness invoking the Fifth Amendment privilege against self-incrimination to state the specific basis for his objection on the record.  See, e.g., State of Florida ex rel. Butterworth v. Southland Corp., 684 F. Supp. 292, 294 (S.D. Fla. 1988).  Accordingly, there appears to be some ambiguity as to the exact language a deponent must use in order to sufficiently invoke the privilege.  Here, both sides appear to be using such ambiguity for the purpose of tactical nuances.[5]  Neither side has cited caselaw that is dispositive of the issue.

For example, in his opposition to the SEC's application, Kielbasa cites to SEC v. Therrien, No. 07-cv-11364-WGY (D. Mass. Aug. 22, 2008).  Docket No. 8 at 4.  In that case, the

---

[5] For example, Kielbasa suggested that even stating the words "self-incrimination" could be damaging to his reputation.  However, the Fifth Amendment privilege protects both the guilty and the innocent.  See Ohio v. Reiner, 532 U.S. 17, 18 (2001); see also Grunewald v. United States, 353 U.S. 391, 421 (1957) ("The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances.").

SEC deposed the defendant in the course of its civil case against him.  Id.  During his deposition, the defendant refused to answer questions regarding his alleged conduct, stating:

> Although I would like to answer that question, because there is a parallel criminal proceeding, on the advice of counsel, relying on the rights granted to me by the Constitution, I respectfully decline to provide testimony in this proceeding that could be used against me in that proceeding.  Upon the disposition of that proceeding, I will answer this question.

Therrien Opp'n to Plaintiff SEC's Motion to Compel at 2, SEC v. Therrien, No. 07-cv-11364-WGY (D. Mass. Sept. 3, 2008) at Docket No. 31.  The SEC moved to compel the defendant's response or to compel the defendant's identification of privilege.  Id. at 1.  In its opposition, the defendant alleged that his "invocation of privilege against self-incrimination was more than adequate."  Id. at 2.  Judge Young denied the SEC's motion, noting that "the invocation of the Fifth Amendment [was] both appropriate and sufficiently definite."  Order re Motion to Compel, SEC v. Therrien, No. 07-cv-11364-WGY (D. Mass. Sept. 25, 2008).

      SEC v. Therrien is not exactly on point.  In Therrien, the defendant specifically referenced a "parallel criminal proceeding" and the fact that testimony could be used against him in that proceeding.  Those statements, taken together, made clear that he was intending to invoke a privilege against self-incrimination.  Therrien, however, never explicitly mentioned the Fifth Amendment.

      Here, Kielbasa specifically stated that he was refusing to answer questions based on the Fifth Amendment.  "[I]n popular parlance and even in legal literature, the term 'Fifth Amendment' in the context of our time is commonly regarded as being synonymous with the

privilege against self-incrimination." Quinn, 349 U.S. at 163.[6] Accordingly, the Court finds that Kielbasa's invocation of the privilege against self-incrimination was sufficiently clear.

The cases cited by the SEC in support of its application are also inapposite. The deponent in Butterworth, 684 F. Supp. at 293, refused to provide any grounds for his refusal to answer questions, only stating "I decline to answer." In addition, all explanations of the Butterworth witness's basis for declining to answer were given by counsel, not the witness himself. Id. Indeed, that court's decision focused on the issue of whether a witness's counsel may assert the Fifth Amendment privilege against self-incrimination on his or her behalf. Id. at 295-95. Here, Kielbasa himself cited the Fifth Amendment as the grounds for his refusal to answer questions.

In SEC v. Shanahan, 504 F. Supp. 2d 680, 682 (E.D. Mo. 2007) and SEC v. Sears, No. 05-728-JE, 2005 WL 5885548, at *2-3 (D. Or. July 28, 2005), the witnesses attempted to assert a privilege, not based solely on the Fifth Amendment, but also based on some notion that they were entitled to expanded rights guaranteed by SEC Form 1662. SEC Form 1662 provides information and legal disclosures to persons who provide documents or testimony during SEC investigations. See Shanahan, 505 F. Supp. 2d at 682. SEC Form 1662 stated that information given by a witness in a civil or administrative proceeding may be used against that witness and that a witness may refuse to give information "that may tend to incriminate you *or subject you to fine, penalty or forfeiture.*" Sears, 2005 WL 5885548 at *3 (emphasis in original); see also Shanahan, 505 F. Supp. 2d at 682. Based on the italicized language, the witnesses in those cases

---

[6] Indeed, at oral argument, government counsel acknowledged that in context it would make no sense for Kielbasa to invoke, inter alia, the Takings Clause of the Fifth Amendment. Although the government mentioned the Due Process Clause, it did not explain how Kielbasa could be interpreted to have been invoking the Due Process Clause in this context.

argued that SEC Form 1662 provided them with broader rights to refuse to answer questions than those contained in the Fifth Amendment privilege against self-incrimination. Shanahan, 505 F. Supp. 2d at 682; Sears, 2005 WL 5885548 at *3. Both district courts rejected the argument. Id.

Accordingly, the Court finds that Kielbasa's invocation of the Fifth Amendment privilege against self-incrimination is sufficient[7] and recommends that the District Court deny the SEC's application.

III.     RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case DENY the SEC's application for an order enforcing the subpoena. The deposition may resume. The SEC has indicated that it would recognize a short form response that Kielbasa could use to assert his Fifth Amendment right against self-incrimination in place of having to assert any lengthy prepared response over the course of questioning. Donahue Aff. at ¶ 18.

IV.     REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

---

[7] In so doing, the Court expresses no opinion as to whether the Fifth Amendment privilege against self-incrimination may be asserted to the questions posed by the SEC. Rather, the Court simply concludes that the words used by Kielbasa to assert the privilege are sufficient to make his intent clear.

72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir. 1993).

                                                /s/ Jennifer C. Boal
                                                JENNIFER C. BOAL
                                                United States Magistrate Judge